**UNITED STATES of America, Plaintiff,**

v.

**Herman Eugene WING, Defendant.**

**No. 2596.**

United States District Court
W. D. Missouri,
Southwestern Division.

July 18, 1969.

---

Charles French, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Ralph E. Baird, Joplin, Mo., Thomas G. Hanlon, Tulsa, Okl., for defendant.

## FINDINGS, OPINION AND JUDGMENT OF ACQUITTAL

ELMO B. HUNTER, District Judge.

On November 13, 1968, defendant Herman Eugene Wing was indicted in a single count indictment charging in substance that on July 18, 1968, having been previously convicted of a felony, Wing "willfully and knowingly did ship and transport and cause to be shipped and transported in interstate commerce from near Bartlesville, State of Oklahoma, to near Seligman, State of Missouri, a firearm, namely, a .12 gauge Winchester shotgun, Serial Number 260588, in violation of Sections 902(e) and 905, Title 15, United States Code."

Wing entered a plea of not guilty to the charge contained in the indictment. The case was fully tried to a jury on June 12, 1969, and the jury on that date returned a verdict of guilty.

Defendant, through his counsel, at the close of the Government's case and again at the close of the trial timely moved for a judgment of acquittal. The Court had indicated to all counsel at the close of the Government's case that it was the Court's thinking that a submissible jury case had not been made against the defendant Wing; that under Criminal Rule 29 the Court would reserve decision until after verdict, and would submit the case to the jury. After the verdict of guilty was returned defendant Wing's counsel again timely moved for judgment of acquittal after jury verdict.

The sole question now before the Court is whether the evidence (and its reasonable inferences) adduced at the trial was sufficient to make a submissible jury case against defendant Wing and to support the verdict of guilty returned by the jury. In considering the question the evidence must be viewed in the light most favorable to the verdict. See, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

The pertinent evidence is relatively brief. There is ample evidence that defendant Wing had previously been convicted of a felony, and this is not disputed by defendant's counsel.

What is denied and crucial is whether there was sufficient evidence that defendant Wing transported or caused to be transported the mentioned shotgun across state lines as charged. The evidence that might arguably be on this subject is comparatively brief. Essentially it comes from Witness Edward Bishop.

Bishop testified that he had known Wing 20 or 25 years, that "He (Wing) was a party along when I had a transaction about a shotgun." He explained that there was "a woman, Mrs. Chipman, that rents a bar off of Mr. Wing. She came with Mr. Wing to my house on a Sunday afternoon." This was the first or second Sunday in May in the town of Dewey, Oklahoma. "During the course of our visit she mentioned she was going out to buy her 17 year old boy a shotgun and she was undecided as to what size he should have. And I said, well the only gun I have is a .12 gauge Winchester and you can take it and let him try to see if it is too big for him. That gun was in a case when I gave it to her. When she left she picked the case up by the handle and carried it out and put it in the back seat of Mr. Wing's car, and that is the last I saw of that shotgun until I saw it at (the trial.)" * * * "Q. Now, what if anything did Wing state to you at the time he left with the young lady who had the gun? A. She was putting the gun in the case in the back seat of the car. He turned around at the door, he knew I didn't know her too well, and he said, 'I will be responsible for that gun if anything happens she don't get it back to you.'" On further examination he stated, "I loaned it to her * * * and not to Gene Wing."

Bishop also stated that some time (days or weeks) later she said to him she was going to have to bring my shotgun back; that she "had never gotten over into Arkansas (where her son lived) to let my son try it out."

Bishop additionally testified that although he did not know the date—did not know if it was on, before, or after July 18, 1968—Wing came to him and said, "It don't look like you are going to get that shotgun back so I am going to pay you for it." He paid Bishop the price Bishop had paid for the gun ($113.00) when Bishop had bought it at a store.

Other pertinent testimony was that Wing was seen in his automobile in Bartlesville, Oklahoma about 1:20 p. m. on July 17, 1968. (There is no testimony as to the gun on this occasion.)

Wing's automobile, with the shotgun in it, was found unattended at Seligman, Missouri, in the parking lot of an abandoned school at approximately 2:30 a. m. on July 18, 1968, by county officers searching the area. Wing was arrested by the side of Highway 37 about 8:45 p. m. on July 18, 1968, near Washburn, Missouri, approximately 6 or 7 miles

from the place where Wing's automobile containing the shotgun on the back seat had been found.

While there was no evidence as to the distance from Bartlesville, Oklahoma to Seligman, Missouri, for the purpose of this motion the Court is willing to judicially recognize (at the Government's request in its brief) that distance as being about 127 miles.

The question thus resolves itself as to whether the above evidence is sufficient to make a submissible jury case and to support the verdict of guilty. It is the Court's view that the evidence is insufficient in both respects.

There is no evidence that Wing either had or saw the shotgun after the second Sunday in May, 1968, when it was taken by Mrs. Chipman. There is no evidence that Wing either drove or rode in the automobile to Seligman on July 17 or 18 or on any other day. There is no evidence as to when or how the automobile got to Seligman or who drove it or rode in it. There is no evidence as to when, how, or by whose act the gun came to be in the automobile. There is no evidence as to what Mrs. Chipman did with the gun in the more than two months interval from when she received it from Bishop until it was found in defendant's car on July 18, 1968.

As earlier mentioned, the burden of proof is upon the Government to prove beyond a reasonable doubt every essential element of the charged offense. Unless the evidence viewed in the light most favorable to the verdict is such as to reasonably permit a finding beyond a reasonable doubt of every essential element of the offense defendant's motion for acquittal after jury verdict must be sustained.

While the Government is entitled to the favorable *reasonable* inferences in support of the verdict which can be drawn from the evidence, it is purely *speculative* as to how or by whom the automobile and gun were taken to Seligman. Did someone steal the car and do it? Did someone borrow it from Wing and do it? Was the gun placed in the car after the car was in Missouri? Did Wing know the car was taken into Missouri? If so, by whom? Did Wing know the gun was in the car? If so, when did he find that out? Consideration of such questions as these in the light of the evidence leads inescapably to the conclusion that answers are speculative and unknown.[1] Certainly, it is not proven beyond a reasonable doubt that it was Wing who drove or caused the automobile to be driven to Seligman; nor that Wing knew the shotgun was in the automobile on that trip across the state line, if indeed it was.

While grave and substantial suspicions suggest Wing was implicated in all of this, and while he elected not to take the witness stand, it is nonetheless clear the high burden of proof of guilt beyond a reasonable doubt of all the essential elements of the crime charged has not been met.

In United States v. Williams, D.C., 254 F.Supp. 199, relied on by the Government, the evidence against the defendant charged with unlawful interstate transportation of a firearm was much stronger than in the instant case. In Williams the defendant purchased and possessed the weapon in Nevada and was arrested with it in his automobile and in his possession in Montana. *He admitted to an F.B.I. agent that he had had the weapon in his possession since the time of purchase.* As stated by the District Court (Montana): "It was of course impossible to have moved the firearm from Las Vegas (Nevada) to Hardin (Montana) without crossing several state lines. This factor *coupled with defendant's admission* was clearly sufficient to submit the case to the jury on this point. (emphasis supplied)."

---

1. Mrs. Chipman's testimony, if given, may have illuminated some of these doubtful factors but she was neither subpoenaed nor appeared as a witness. Wing did not testify, but in view of his constitutional privilege to remain silent, no inference can be drawn against him from his failure to testify.

Peterson v. United States, 8 Cir., 411 F.2d 1074, June 11, 1969, also cited by the Government, clearly sets out the applicable law concerning the evidence necessary to support a verdict of guilty. As there stated, " * * * the question is merely whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt." The facts involved in the Peterson case, described by Circuit Judge Matthes as "an unbroken chain of telling circumstances" are both different and necessarily distinguishable from those in the instant case. In Peterson the defendant was positively identified as being seen in front of the bank (a short time later robbed) and money taken from the bank during the robbery was proved to have been in the defendant's possession a couple of days later. A chain of other circumstantial evidence pointed to defendant as having robbed the bank.

Defendant Wing's motion for acquittal after jury verdict is sustained and a judgment of acquittal is hereby entered.

It is so ordered.