STATE of Missouri, Respondent,

v.

Herman Eugene WING, Appellant.

No. 54822.

Supreme Court of Missouri,
Division No. 1.

May 11, 1970.

Motion for Rehearing and for Transfer
Denied July 13, 1970.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Ralph Baird, Joplin, Thomas G. Hanlon, Tulsa, Okl., for appellant.

HIGGINS, Commissioner.

Herman Eugene Wing was charged by information in Barry County with possession of burglar's tools. Upon change of venue to Newton County, a jury convicted him of that offense and assessed his punishment at 10 years' imprisonment. Sentence and judgment were rendered accordingly. Section 560.115, V.A.M.S.

Appellant's first attack goes to the sufficiency of the complaint upon which the Magistrate Court of Barry County issued a search warrant and pursuant to which many of the exhibits in evidence were found and seized. The complaint for search warrant was made July 18, 1968, upon the oath of Joe R. Ellis, Prosecuting Attorney of Barry County: "* * * that he has reason to believe that on the premises known as one 1968 model, two door, Pontiac, Automobile, Grand Prix model, Serial Number 266578R107539, in the county of Barry, State of Missouri, at 101 East Eighth Street, Cassville, Missouri, there is now being concealed certain property, to-wit: burglary tools which are believed to have been used in the burglary of the Bank of Seligman, Missouri, a corporation, which was feloniously and forcibly broken and entered, the same being a building where money and valuable things were kept with intent said money and valuable things then and there being found to steal on this 18th day of July, 1968, and affiant further believes that the automobile aforesaid is the property of Herman Eugene Wing, Bartlesville, Oklahoma, a known bank burglar and that said vehicle was used in the burglary aforesaid.

"Affiant states that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: That the automobile is legally registered to Herman Eugene Wing, a known bank burglar; that the automobile was found parked in the area where the burglary aforesaid was committed on July 18, 1968, immediately after the burglary was committed; that the said automobile appears to be abandoned and that diligent efforts to locate the owner or driver thereof have failed; that said automobile bears an Oklahoma license; that during the course of the burglary aforesaid shots were exchanged by persons committing said burglary and Clyde Mitchell, President of said Bank, and that the said persons committing the burglary fled on foot."

Appellant contends, Points I and II, that the court erred in overruling his motion to suppress evidence taken from the automobile pursuant to the warrant and in admitting the same at trial, alleging that the search warrant was illegally issued in

that the complaint upon which it was issued failed to show probable cause. The dispositive question of both points is the sufficiency of the complaint. Appellant's argument is that the prosecutor's complaint "was based on information and belief and hearsay, and did not show sufficient facts for the issuance of a search warrant by the magistrate," and that he did not reveal the source of his information and belief. Appellant's citations are representative of several familiar principles bearing on a determination of sufficiency of a complaint for search warrant, e.g., Siden v. United States, 8 Cir., 9 F.2d 241; Kirvin v. United States, 2 Cir., 5 F.2d 282, and Poldo v. United States, 9 Cir., 55 F.2d 866, that probable cause is to be determined from the complaint and, if filed, supporting affidavits; Baysden v. United States, 4 Cir., 271 F.2d 325, that the warrant shall issue only on affidavit establishing grounds for issuance; Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520, that a violative search cannot be made lawful by the success of the search; Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697, that a warrant may issue upon hearsay if the affiant sets forth the source, validity, and reliability of his information; Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637, and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, that a warrant should not issue upon affidavit of an official which merely shows he is in possession of information which causes him to believe the suspect is in possession of property without revealing the source of his information.

 The complaint in this case was consistent with these authorities. Criminal Rule 33.01, V.A.M.R., provides: "(a) If a complaint in writing be filed with the judge or magistrate of any court having original jurisdiction to try criminal offenses stating that personal property * * *, the seizure of which under search warrant is * * * authorized * * *, is being held or kept at any place or in any * * * car, * * * motor vehicle, * * * within the territorial jurisdiction of such judge or magistrate, and if such complaint be verified by the oath or affirmation of the complainant and states such facts positively and not upon information or belief; or if the same be supported by written affidavits verified by oath or affirmation stating evidential facts from which such judge or magistrate determines the existence of probable cause, then such judge or magistrate shall issue a search warrant * * * to search the place therein described and to seize and bring before such judge or magistrate the personal property therein described." It is noted that this rule provides two situations in which a search warrant shall issue: The first exists upon the filing of a complaint, verified by oath, which states facts positively and not upon information or belief; the second exists when the complaint is supported by written affidavits stating evidential facts from which the judge determined probable cause. "In the first situation, the verified statement of positive facts empowers the court to issue the search warrant; in the second, the court determines probable cause for issuance of the warrant from the facts contained in the complaint and from the affidavits or other evidence submitted to support the complaint." State v. Taylor, Mo., 391 S. W.2d 929, 932. These situations were demonstrated in State v. Lock, 302 Mo. 400, 259 S.W. 116, where the complaint for search warrant read: " 'I, J. P. Smith, prosecuting attorney * * * state that I verily believe that in the building known as the residence, etc., * * * and further as affiant verily believes that in said building, etc., * * * and a place in which intoxicating liquors are manufactured as affiant verily believes contrary, etc. * * *.' " 259 S.W. l.c. 121[4]. It is apparent that this complaint would fall into the second situation and its insufficiency is equally apparent in that "probable cause may not be judicially found. The affiant gives no reason for his belief, nor does he

support, verify, or substantiate it, establishing the existence or truth of any fact or circumstance, by proof or competent evidence. The statement is that he verily believes certain things * * * and if he verily believed it, however unfounded his belief may have been, no fact appears in the statement that would subject him to legal responsibility." 259 S.W. l.c. 121[4]. The court also stated, however, that upon looking to the prosecutor's sworn statement as the only document in support of probable cause, "if it contains any statement of fact from which probable cause may be inferred, it complies with the Constitution. If no statement of fact is stated therein, from which probable cause may legally be inferred, * * * defendant's rights * * * have been violated." 259 S.W. l.c. 121[4].

Application of this test to, and comparison of, Mr. Ellis's complaint shows, by contrast, its sufficiency and demonstrates that appellant's argument fails to accord credence to all of the complaint. The magistrate judge was entitled to "a common-sense reading of the entire affidavit," Spinelli v. United States, supra, 393 U.S. l.c. 415, 89 S.Ct. l.c. 588; and such a reading, together with the suggested test and contrast, shows failure by appellant to distinguish between separate portions of the complaint and between allegations of belief and fact within separate portions of the complaint. The first paragraph of the complaint alleges affiant's reason to believe that burglary tools believed to have been used in a burglary are in an automobile believed to have been used in a burglary and owned by Herman Wing. That paragraph also contains statements of positive fact, i.e., description of a specific automobile; that it was at a specific place in Cassville, Barry County, Missouri; that the Bank of Seligman in Barry County was burglarized July 18, 1968; that Wing was a known bank burglar. The second paragraph consists entirely of statements of positive fact, i.e., that the specific automobile was registered to Wing; that he

was a known bank burglar; that the specific automobile was found parked in the area where, and immediately after, the specified burglary was committed July 18, 1968; that it appeared abandoned; that efforts to locate the owner had failed; that it bore Oklahoma license plates; that shots were fired by the burglars in the course of the specified burglary; that the persons committing the burglary fled on foot.

With such statements of positive facts, as opposed to belief and hearsay, the court had sufficient evidential facts from which to find probable cause, as opposed to a prima facie case, without the necessity of supporting affidavits. State v. Taylor, supra, 391 S.W.2d l.c. 932[1, 2]; Spinelli v. United States, supra, 393 U.S. l.c. 419, 89 S.Ct. l.c. 590; Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142.

Clyde G. Mitchell, Vice President of the Bank of Seligman, received a telephone call in the early morning of July 18, 1968. In response to the call he loaded two guns, called the sheriff's office, and drove to the bank located on the east side of Highway 37, a north-south main road in and through Seligman. When he drove in front of the bank he saw two men, "One was standing on concrete flower boxes up there and the other man was standing beside the boxes as if steadying him." The man on the boxes "was up there where the burglar alarm system is. * * * It was not sounding." Mr. Mitchell decided he needed help and drove on to the home of his brother-in-law, Fred Preston. Mr. Preston, upon being awakened, got up, secured a weapon, and accompanied Mr. Mitchell back to the bank. The men were still in the position in which Mr. Mitchell had last seen them. Mr. Mitchell stopped his car on the west side of the street. "We hollered across at them * * * something about 'give up' or—." The men did not give up but "left on foot, running." They ran north about 50 feet, turned east past an office building and down into an old railroad bed. Mr. Mitchell and Mr. Preston lost sight of them. As to identification of the men, "The one

on the sidewalk that was doing the steadying, he had on what appeared to be * * * overalls or might have been coveralls, but whenever he drew his pistol you could see it was not jeans or something that fit tightly. * * * The other man was dressed in jeans like that, khakis, or something and we could tell, when running up the street, that he didn't have on an ordinary pair of shoes * * * more of a hightop boot thing." When the men fled from the bank they left a "sledge hammer laying underneath the burglary alarm system, a wrecking bar lying there. There was a wrecking bar inside the bank premises and also a pair of large pliers * * * adjustable pliers." Mr. Preston's testimony was corroborative of that of Mr. Mitchell.

William Allen Moran, age 16, lived in Seligman a few doors from the bank. Around 1:30 or 2:30 a.m., July 18, 1968, he had been home "eating a pizza. I was going to walk a little of it off. I went out the back door and got to the corner of the building, there was two men standing beside it as you go in, and I said 'Hi' to them. They would say nothing so I turned and walked off slow, but not real slow." The men were "right behind the bank, by the window" at the east end of the bank, about three feet from the door. As to identification, "The tallest one was wearing green overalls, and the shorter one was wearing a white shirt with overalls. * * * I went the other direction over to a neighbor's trailer. My mom was out there and I told her and she went in and called, and I stood out behind. * * * The taller one had a pick or something working on the bank door, beating on it a little * * *." Asked if he could identify the defendant, Mr. Moran answered, "In the physical ability. * * * Shorter one was heavyset, not real heavyset." He was the shorter of the two. After telling his mother of his observations he "went to the front window a little while, they come up and stood in front a little while and they got in a car and drove to the south,

two or three minutes, and turned back and parked straight across from my house. Two of them got out of the car, one in the back seat got out of the back seat, and the third one drove off." They were the same two he had seen on foot earlier. The car was a "Blue '68 Grand Prix, with long sloping back glass, had Oklahoma license plates on it." He later observed the car driven by Mr. Mitchell and with Mr. Preston as passenger, after which he no longer saw the men he had observed get out of the car.

Sheriff Bill Hemphill received the call from Mr. Mitchell about 2:10 a.m., July 18, 1968. He went immediately to the bank. Deputy Sheriff Abe Dummitt preceded him. "I drove up and stopped in front of the bank and I seen a bunch of tools laying out in front of it * * *. I started looking for a car that had been used by the burglars." About ten minutes later he found a 1968 Pontiac Grand Prix Bonneville "southwest of the Seligman Bank about a thousand feet in what is known as the old school-ground, used to be a schoolground but it burned down." It was off the traveled thoroughfare. He looked into the car with his flashlight, took the keys which were left in it, locked it, noted the car number and 1968 Oklahoma license plates. He had the car towed to Cassville and later in the presence of Joe Ellis and some of his deputies, searched the car pursuant to a warrant issued by the magistrate court upon complaint of Joe Ellis, the prosecutor. There was a shotgun in the front seat; the other items seized by the sheriff were in the trunk. Among the items taken were two 50-foot lengths of green plastic garden hose, rifle case, acetylene igniter, tip cleaner, cutting tip, regulator, oxygen and acetylene gauges, bottle of oxygen, two lengths of pipe, welder's goggles and gloves, duffel bag, shoes, blanket, Oklahoma title to a 1968 Pontiac Bonneville issued to Herman Eugene Wing, excise tax receipt and application for Oklahoma registration in the name of Herman Eugene Wing, and a 6-inch crescent

wrench. Sheriff Hemphill was given written permission by appellant "to release this 1968 Pontiac to Eugene Wing's wife." He described the manner in which the tools seized could be used to commit a burglary and how hoses are used to run water over a safe while cutting it and the blanket could be used to cover a window. The shotgun could be used to stand off an officer who might arrive at a burglary scene. Sheriff Hemphill had known defendant as a rodeo calf roper and also had pictures of him in his official files. He knew also "that he had done two terms in the penitentiary on burglary." He gave a picture of defendant to his deputy, Wilbert Shockley. Sheriff Hemphill identified a photograph attached to Exhibit 33 as being that of defendant, and he read from an F.B.I. sheet that defendant had been convicted of burglary in Oklahoma.

Mr. Shockley took part in a manhunt in the Washburn-Seligman communities July 18, 1968. Around 8:45 p.m., July 18, 1968, while still daylight, he was at his sister's home in Washburn, also on Highway 37 about six miles from Seligman. "I saw this fellow sitting in a ditch along Highway 37 just north of my sister's house." He was in a "squatting position"; the ditch was about three feet deep with weeds "probably a foot high." The man proved to be defendant and Deputy Shockley arrested him.

William C. Baker, a former employee of the Bartlesville, Oklahoma, Police Department, stated that in July, 1968, he was acquainted with defendant and had had special duties in connection with surveillance of defendant.

Defendant's case consisted of the reading of a stipulation that a day or so following July 18, 1968, F.B.I. Agent Mitchell interviewed witness Moran in connection with the attempted burglary of the Bank of Seligman, and that witness Moran told the agent that the automobile he had seen July 18, 1968, was a "blue 1968 car, make unknown, with long sloping back windows."

Appellant makes several charges of error with respect to the admission of some of the stated evidence. Under Point IV, he complains of the admission of state's Exhibit 33 into evidence on the theory it went beyond any legitimate or relevant purpose of "throwing light upon intent"; under Point XII he complains of inflammatory and prejudicial actions in admission of testimony from witness Baker that defendant was under surveillance, of evidence of an "attempted" burglary of the Bank of Seligman, of evidence of a "shoot-out," of admission and later withdrawal of a shotgun; under Point V he complains that evidence of the "attempted" burglary of the Bank of Seligman was irrelevant, had no tendency to establish his guilt, did not tend to establish identity, and was unduly prejudicial; and under Point VI he complains that testimony admitted from witnesses Mitchell, Pierson and Moran was not relevant, did not connect defendant with the offense on trial and was unduly prejudicial.

Appellant's argument is that these matters involved unrelated and far removed crimes, and that they placed defendant's character in issue even though he did not take the stand, all to his prejudice. See United States v. Sansone, 2 Cir., 206 F.2d 86; Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196; Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; United States v. Dressler, 7 Cir., 112 F.2d 972; Greer v. United States, 245 U.S. 559, 38 S.Ct. 209, 62 L.Ed. 469; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Boyd v. United States, 142 U.S. 450, 458, 12 S.Ct. 292, 35 L.Ed. 1077.

Appellant concedes in his citation of State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938, 945[12], that a prosecution for possession of burglar's tools requires proof of a criminal intent upon the part of the possessor to use them burglariously or for

some criminal purpose. See also State v. Medley, 360 Mo. 1032, 232 S.W.2d 519, 524[5] [7]. It is also established that although proof of commission of separate crimes is generally not admissible, such proof is admissible if it " 'has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial * * *.' 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial.' " State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307; State v. Allen, Mo., 442 S.W.2d 18, 19.

Application of these rules to appellant's complaints shows that the evidence in question was not received in error in this case. State's Exhibit 33, said to be irrelevant, was a copy of Oklahoma state penitentiary records showing two prior burglary convictions. The exhibit and what it showed were not inadmissible because, although evidence of related crimes, they tended to show defendant's unlawful intent in his possession of burglar's tools. It has been recognized that such intent may be shown by proof of the defendant's reputation as a burglar, State v. Watson, Mo., 386 S.W.2d 24, 29–30[6–10]; State v. Caffey, Mo., 436 S.W.2d 1, 3[2]; or that he was an associate of burglars, State v. Lorts, Mo., 269 S.W.2d 88, 91[5]; State v. Watson, supra; and that such intent may also be shown by defendant's previous conviction of similar crimes, State v. Young, Mo., 425 S.W.2d 177, 182[8].

By analogy, evidence of the burglary or attempted burglary of the Bank of Seligman was proper and relevant on the intent with which the tools were possessed and on identity. State v. Reese, supra; State v. Allen, supra.

Appellant's Point VII is a further complaint on the court's rulings in admitting the prior convictions in evidence. His contention is that the court failed to fully instruct the jury on "all questions of the law necessary for their guidance," Criminal Rule 26.02, V.A.M.R., in that the court did not instruct that evidence of prior convictions and reputation could be considered only on the issue of intent and not on the issues of character and guilt. Appellant did not request such an instruction.

Under Rule 26.02, supra, the trial court is not required to give cautionary instructions on collateral issues when no request is made for such an instruction. State v. McQuerry, Mo., 406 S.W.2d 624, 629[9]. Specifically, absent a request, the court is not required to instruct the jury as to any limited consideration to be given of former convictions. State v. Meller, Mo., 382 S. W.2d 671, 674[3].

Appellant's Point IX is a further complaint on the court's ruling with respect to the shotgun, Exhibit 20, received in, and permitted to be withdrawn from, the evidence. He contends the court's admonitions were insufficient and that a mistrial should have been declared.

When the court permitted the state to withdraw the shotgun, the defendant moved for a mistrial for the reason it had been previously exhibited and was the subject of testimony from Sheriff Hemphill. The court denied the mistrial, after which the defense asked that the jury be instructed that the gun had been withdrawn and to "disregard any evidence of it." The court then instructed the jury that the gun had "been withdrawn as evidence in this case and you're instructed to disregard it."

The motion for mistrial called for an exercise of the court's discretion and, in an exercise of that discretion, the court instructed the jury to disregard the evidence. By its order, the court, in the context of this case, "eliminated any possible prejudice

in the minds of the jury." State v. Neal, Mo., 416 S.W.2d 120, 124[7,8]; State v. Russell, Mo., 395 S.W.2d 151, 155[4]; State v. Nolan, Mo., 423 S.W.2d 815, 818–819 [11–14].

Appellant's Points III, VIII, X, and XI go to the sufficiency of the evidence. Under Point III, he charges that the burglary tools should have been excluded because they were not connected to him; under Points VIII, X, and XI, he charges he should have had an acquittal because the evidence failed to show that he had possession or custody of the tools in Seligman on July 18, 1968. He argues that his arrest at a point several miles away is too remote to permit an inference of custody and possession of tools in Seligman. He also argues that there was no showing that he drove or rode in his automobile to Seligman which circumstances did produce an acquittal in United States v. Wing, D. C.W.D.Mo., 302 F.Supp. 1247. That result is not conclusive here because the charge there was transportation of a firearm in interstate commerce and the crucial fact for proof would be possession of the firearm while crossing a state line.

When the evidence is viewed in the light most favorable to the state, State v. Watson, Mo., 350 S.W.2d 763, 766[1]; State v. Wishom, Mo., 416 S.W.2d 921, 923[1], it cannot be said as a matter of law that the evidence is not sufficient to sustain the judgment of conviction. Criminal Rule 26.10, V.A.M.R. The statement recites evidence from which it could be inferred: that in the early morning of July 18, 1968, two men attempted to burglarize the Bank of Seligman; that the physical features of one of the men were those of defendant; that the two were seen to get into a blue 1968 Grand Prix Pontiac automobile bearing Oklahoma license plates; that the automobile returned shortly to the bank and the two men got out; that two men were at the bank attempting to reach the burglary alarm, one standing atop two concrete flower boxes, the other on the

ground steadying him; that when an attempt was made to apprehend the men, they fled the scene on foot leaving behind a sledge hammer, wrecking bar, and pliers; that within ten minutes the automobile was found abandoned approximately 1000 feet from the bank; that the car belonged to defendant and contained numerous burglary tools; that defendant was found later the same day within seven miles of the scene sitting in a weedy ditch; that defendant's home was in Bartlesville, Oklahoma; that he had a reputation as a burglar.

Appellant charges that the use of witness Moran who identified defendant by his physical features "constituted a suppression of, or failure to disclose, evidence in the possession or control of the prosecution favorable to the defendant * * *." The unsupported argument is that the witness had been impeached in federal court and had told conflicting stories; that the prosecution used this witness, vouching for him, all the while knowing of the conflict; that the effect of his testimony was to cause the jury to speculate that defendant was a participant in the attempted burglary of the bank.

A witness is always subject to impeachment but use of such a witness does not constitute suppression of, or failure to disclose, evidence. This is particularly so in this case because the defense was fully aware of all testimony given by witness Moran in the federal court and the state had even entered into a stipulation with the defense with respect to known inconsistencies.

Finally, appellant claims that the punishment assessed is excessive and resulted from these "unduly prejudicial and inflammatory matters." The punishment and sentence are within the limits provided by statute, Section 560.115, supra, and the assigned errors are shown to be without merit. Consequently, there is no excessive-

ness in the judgment. State v. Kirkpatrick, Mo., 428 S.W.2d 513, 517[5–7].

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and HENLEY, Alternate Judge, concur.

BARDGETT, J., not participating because not a member of the Court when the case was submitted.