STATE of Missouri, Plaintiff-Respondent,

v.

Leahmon TRIPLETT, Defendant-Appellant.

No. 35015.

Missouri Court of Appeals,
St. Louis District,
Division No. 1.

Jan. 28, 1975.

Motion for Rehearing or Transfer Denied
March 11, 1975.

Robert H. Wendt, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, K. Brendan Ryan, Circuit Atty., James A. Roche, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

Defendant Leahmon Triplett was convicted of assault with intent to kill with malice aforethought and sentenced to thirty-five years imprisonment under § 556.-280, RSMo 1969, V.A.M.S. (Second Offender Act). From this judgment and sentence defendant has appealed. We affirm.

Evidence supporting the verdict discloses that on January 9, 1971 at approximately 10:30 p. m. defendant and a companion, after an altercation with Arthur Mangrum, a tavern owner, left the tavern only to return minutes later in an automobile. One of the two removed a shotgun from the car trunk and defendant shot Kenneth King, a patron, as he was leaving the tavern. As a result of this injury King's right leg had to be amputated above the knee.

On appeal, defendant does not question the sufficiency of the evidence, but presents eight assignments of error. Three points, which will be considered first, are presented in a brief filed by defendant's attorney. Five additional issues are raised in a *pro se* brief filed by defendant.

Defendant first asserts that the court erred in allowing the testimony of Dr. Jaffe, who treated the victim after the assault, and by admitting the medical records of Kenneth King, the victim, into evidence, since no proper foundation was laid for this evidence. Defendant contends that the records were not properly qualified under § 490.680, RSMo 1969, V.A.M.S. (Uniform Business Records as Evidence Law), and thus Dr. Jaffe's testimony from these records was inadmissible. He further asserts that the evidence failed to indicate that the records were made and kept in the regular course of business, and that Dr. Jaffe was unable to prove that these records even came from City Hospital. Additionally, defendant maintains that there was no evidence to show who had custody of the medical records.

It is well established that hospital records come within the provisions of § 490.680, RSMo 1969, V.A.M.S. State v. Griffin, 497 S.W.2d 133, 136[4] (Mo.1973). In order for a hospital record to be admissible under this statute, there must be a preliminary showing of the identity of the record, of the mode and time of its preparation, and the making thereof in the regular course of business. State v. Durham, 418 S.W.2d 23, 30[16] (Mo.1967). With regard to the verification and authentication of business records, courts require slight further evidence in support of the records offered other than the presumption of regularity that arises from a showing of their source. Rossomanno v. Laclede Cab Company, 328 S.W.2d 677, 682[12] (Mo. banc 1959).

Here, Dr. Jaffe identified Kenneth King's medical records as official City Hospital records. Jaffe had assisted in King's surgery and treatment and had made many entries in the records himself. He testified that the entries were made contemporaneously with the events described by persons observing the incidents. Dr. Jaffe also stated that these records had been obtained from City Hospital's medical records department, that these records were kept regularly and systematically by the staff and medical records librarian of City Hospital, and that such records were made available to hospital staff members. The records at issue were characterized by Dr. Jaffe as standard City Hospital records. Based on these facts, we find that the requirements of § 490.680, RSMo 1969, V.A.M.S., have been satisfied. A trial court has wide discretion to determine whether the requirements for admission of business records have been met. Hermann v. St. Louis Public Service Company, 345 S.W.2d 399, 404[9, 10] (Mo.App.1961). Considering the evidence adduced in this case, we can find no abuse of that discretion. Thus, both Dr. Jaffe's testimony and King's medical records were admissible.

Defendant's arguments to the contrary are without merit.

Defendant next contends that the court erred in failing to declare a mistrial based on comments made by the prosecuting attorney during defense attorney's closing argument. In his closing argument defendant's attorney, referring to the fact that there was no evidence to show that the white Ford was Triplett's car, stated: "Now, believe you me if it had been a stolen automobile they'd have been in here saying, 'Yes, sir, it had a phony license plate on it.'" In response to this, the prosecuting attorney objected: "Your Honor, I object. Counsel well knows that no other crime committed by this man can be brought in before this jury." This objection was sustained. A defense motion for a mistrial based on prosecutor's statement was overruled. Defendant contends that the obvious implication of this statement was that defendant had committed other crimes. Since evidence of separate and distinct crimes by a defendant is inadmissible in the trial of the case in chief, defendant urges that the prosecutor's objection was highly prejudicial, of no probative value, and therefore a mistrial should have been declared.

We agree with defendant's general proposition that evidence of separate and distinct crimes is not admissible unless such proof tends to establish directly the defendant's guilt of the charge for which he is on trial. State v. Boyer, 476 S.W.2d 613, 616[1] (Mo.1972); State v. Wing, 455 S.W.2d 457, 464 (Mo.1970). Even assuming in this case that the prosecutor's remark was proof of a separate crime, or at least inferred the commission of other crimes, where such a comment or argument is retaliatory in nature and invited by improper remarks and suggestions of defense counsel, there exists no grounds for reversible error. State v. Whitnah, 493 S.W.2d 32, 35[3, 4] (Mo.App.1973). The declaration of a mistrial is a drastic remedy and should be granted only under unusual circumstances. State v. Smith, 431 S.W.2d 74, 83 (Mo.1968). We fail to discern here any extraordinary circumstances warranting the drastic remedy of a mistrial. Defendant's contention on this issue is without merit.

We turn to another assignment of error. Defendant contends that the trial court erred in failing to declare a mistrial as a result of certain comments by the prosecutor. During his closing argument, defense counsel called defendant forward to try on a black coat which allegedly had been worn by defendant on the night of the shooting incident. The prosecutor responded with the following: "Of course, now, wait, Your Honor. I am going to object to counsel—he had plenty of opportunity for this type of silly demonstration." In his closing argument, the prosecutor mentioned that: "Now, Mr. Wendt [defense attorney] tried after he knew that his legal opportunity—his legal (indicating)—." Defense counsel interposed an objection at this point and moved for a mistrial. The objection and motion for mistrial were both overruled. The prosecutor then continued: "I want to simply point out that Mr. Wendt called Leahmon Triplett up here to put this coat on at a time when first of all it wasn't the proper point * * *." Defendant alleges that these statements violated his constitutional rights. Specifically, he asserts that such remarks constituted a comment on his failure to testify in violation of the self-incrimination clause of the Fifth Amendment of the United States Constitution and Article I, Section 19 of the Missouri Constitution, V.A.M.S. Defendant thereby asserts that in this instance the prosecutor attempted to do indirectly that which he could not do directly, and a mistrial was warranted. It is well settled in this state that a defendant's constitutional rights are not violated under these circumstances unless there is a direct and certain reference by a prosecutor to the failure of an accused to testify. State v. Hutchinson, 458 S.W.2d 553, 555[3] (Mo. banc 1970); State v. Pruitt, 479 S.W.2d 785, 789[8] (Mo. banc

1972). Defendant has failed to point to any such direct and certain references here, and our review of these comments leads us to conclude they did not rise to this level. Even if these statements were construed to mean that defendant had failed to offer evidence, they would still be acceptable. See State v. Pruitt, *supra* at 790; State v. Sechrest, 485 S.W.2d 96, 98[3] (Mo.1972). The comments at issue here did not violate constitutional rights and did not warrant a mistrial.

■ Defendant has raised five additional points in his *pro se* brief. He first contends that he was penalized for exercising his Sixth Amendment right to a jury trial. After a first trial of this case had resulted in a hung jury, defendant entered a plea of guilty to this charge and was sentenced to a twelve year term in prison. However, this guilty plea subsequently was set aside at defendant's request. In his second trial, as already noted, defendant was convicted and received a thirty-five year sentence. Defendant thus argues that his constitutional rights were violated when he chose to set aside his guilty plea and request a jury trial, since he received a longer sentence as a result. But this point has been raised for the first time on appeal. This issue was not included in defendant's motion for a new trial, and therefore nothing has been preserved for appeal. Rule 84.13(a), V.A.M.R.

■ Defendant raises as another point that the trial court erred by admitting into evidence the shotgun allegedly used in the assault on Kenneth King. Defendant argues that the shotgun was obtained as the result of an illegal search and seizure since the police seized the weapon without a warrant and without probable cause, thereby violating his Fourth Amendment rights. Before trial, an evidentiary hearing was held on defendant's motion to suppress this shotgun as evidence, and defendant's motion to suppress was denied. At trial, the shotgun was admitted into evidence without objection. At that point, defendant was required to keep any issue concerning the admission of the shotgun alive by a timely objection when it was offered and later by properly raising the issue in a motion for new trial. State v. Caffey, 457 S.W.2d 657, 659[3] (Mo. 1970); State v. Fields, 442 S.W.2d 30, 33[3] (Mo.1969). In his motion for a new trial, defendant had alleged as a point that the court erred in "[o]verruling defendant's motion to suppress evidence." But such language framed as an assignment of error is insufficient to preserve anything for review. State v. Estes, 281 S.W.2d 6, 7[1] (Mo.1955); Rule 27.20(a). Therefore, no issue as to the introduction of the shotgun into evidence is properly before us.

■ Defendant further contends that the trial court erred by admitting into evidence Arthur Mangrum's testimony concerning defendant's assault on him prior to the shooting of King. Defendant relies on the "plain error" doctrine, Rule 27.20(c), to sustain this position. Mangrum testified that before the shooting defendant had pointed a pistol at him and pulled the trigger twice, but the weapon failed to discharge. Defendant claims that this was evidence of another crime unrelated to the King shooting and therefore should not have been admitted. Thus, defendant asserts that the jury was inflamed and he was denied a fair trial. As noted earlier, proof of separate and distinct crimes is inadmissible when it does not have some tendency to establish directly a defendant's guilt of the charge for which he is being tried. State v. Boyer, *supra* 476 S.W.2d at 616[1]; State v. Wing, *supra* 455 S.W.2d at 464. However, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or (5)

the identity of the person on trial charged with the commission of the crime. State v. Holbert, 416 S.W.2d 129, 132[4] (Mo. 1967).

■ Arthur Mangrum's testimony, even if related to a separate crime committed by defendant, properly was admitted as an exception. From the facts elicited, an inference could be drawn that the altercation between Mangrum and defendant was a motive for the ensuing shooting incident. The shooting occurred outside the tavern only minutes after the quarrel inside the tavern. Further, the victim King was of a similar build and approximately the same height as Mangrum. Thus, a jury could infer that King was shot mistakenly when Mangrum was the intended victim.

Mangrum's testimony concerning defendant's assault on him would also be admissible as tending to prove the identity of defendant and his involvement in the shooting. Since Mangrum identified defendant at a lineup the night of the shooting and also at trial, evidence of the exchange between the two men shortly before the assault on King would tend to support Mangrum's identification of defendant. Thus, evidence of defendant's assault on Mangrum was admissible. We find no "plain error" present.

■ Defendant also advances the argument that he was denied a fair trial and that his Sixth Amendment rights were violated because he was unable to cross-examine and confront Kenneth King. Defendant alleges that certain statements attributable to King were introduced at trial. But this is mere speculation; the record is void of any such statements. King did not appear as a witness at defendant's trial. But the state has no obligation to place any person on the witness stand in a criminal trial. State v. Eaton, 302 S.W.2d 866, 874[8] (Mo.1957). Likewise, there is no requirement that a defendant be confronted by all witnesses who might have been called by the state. State v. Napolis, 436 S.W.2d 645, 649[8] (Mo.1969); State v. Nolan, 499 S.W.2d 240, 251[6] (Mo.App. 1973). Because King never did testify at trial, the right to cross-examine and confront him never arose. State v. Ivey, 442 S.W.2d 506, 508[4] (Mo.1969). Defendant's allegations on this point are without merit.

■ In his last point, defendant contends that he was denied a fair trial because perjured testimony was used knowingly to convict him. This argument is based on the allegation that at the trial of his accomplice, Gerald Turnbough, Arthur Mangrum had testified that defendant did not shoot King, while at defendant's trial Mangrum stated that defendant had fired the weapon. At defendant Triplett's trial, Mangrum testified that "to the best of my knowledge" defendant had fired the shot, but he "was not sure." There is no record before us as to the content of Mangrum's testimony at Turnbough's trial. Mangrum was not cross-examined during Triplett's trial concerning any previous testimony given at Turnbough's trial. No portion of the transcript of the Turnbough trial was introduced into evidence at the Triplett trial nor at the hearing on defendant's motion for a new trial. Defendant has the burden of proving that a witness did, in fact, commit perjury. State v. Garton, 396 S.W.2d 581, 584[8, 9] (Mo.1965). In order to obtain the relief here sought, defendant must prove that the state knowingly used perjured testimony. State v. Harris, 428 S.W.2d 497, 502[11] (Mo.1968). Defendant here has failed to prove that perjury was in fact committed and that the state knowingly used such testimony. His allegations surrounding Mangrum's testimony at the Turnbough trial are mere conjecture and completely unsubstantiated. Defendant's attorney stated at the hearing on the motion for a new trial that he had

read the transcript of the Turnbough trial, and that Mangrum's testimony was consistent at both trials. Defendant's contentions on this issue are without merit.

Judgment is affirmed.

DOWD, C. J., and CLEMENS and RENDLEN, JJ., concur.