STATE of Missouri, Respondent,

v.

Larry Raymond GATES, Appellant.

No. 55989.

Supreme Court of Missouri,
Division No. 2.

May 10, 1971.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackkmar, Special Asst. Atty. Gen., St. Louis, for respondent.

John P. Haley, Jr., Kansas City, for appellant.

DONNELLY, Presiding Judge.

Appellant, Larry Raymond Gates, was convicted of robbery in the first degree in the Circuit Court of Jackson County, Missouri, and his punishment was assessed at imprisonment for a term of forty years. Following rendition of judgment and imposition of sentence, an appeal was perfected to this Court.

The question directly presented on this appeal is: *What are the duties and responsibilities of appellate counsel, employed and appointed, in criminal cases?* The Supreme Court of the United States spoke on the question in two cases decided in 1967.

In Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (decided March 13, 1967), the Court declared invalid our former practice of (1) not requiring counsel on appeal and (2) of considering on appeal the questions raised in the trial court by the motion for new trial on the basis of *pro se* briefs or on the basis of no briefs at all. The Court was of the opinion that indigent defendants are entitled to the "assistance of appellate counsel in preparing and submitting a brief to the appellate court which defines the legal principles upon which the claims of error are based and which designates and interprets the relevant portions of the trial transcript * * *."

In Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (decided May 8, 1967), the Court was "concerned with the extent of the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal." The Court said (386 U.S. 738, 744–745, 87 S.Ct. 1396, 1400): "The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae*. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

"This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter

that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel. The no-merit letter, on the other hand, affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate. Moreover, such handling would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled. This procedure will assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel."

In the 1970 tentative draft of ABA Standards, The Prosecution Function and The Defense Function, the Advisory Committee noted (p. 298) that the Court, in *Anders*, (1) "wanted to prevent withdrawing counsel from filing a brief *against* the appellant's position in order to demonstrate frivolity," and (2) "believed that the brief of withdrawing counsel for the appellant could be quite useful to the appellate court." The Advisory Committee also observed that "[n]either of these laudable purposes solves the dilemma posed for counsel who is required to brief the unbriefable."

The position taken by the Advisory Committee in an attempt to solve this "dilemma" is as follows (pp. 300–302):

"On the premise that the lawyer is of greater aid to the court by remaining with a weak or groundless appeal than by withdrawing, the preferable position is for him to remain even at some cost to the concept of professional independence of the lawyer. The lawyer cannot properly engage in advocacy calculated to mislead or deceive the court, and no lawyer should do so. But, in this situation, appearance of counsel is not an implicit representation to the court that he believes in the legal substantiality of the contentions advanced. The court should not take an absence of a request to withdraw as an indication of the lawyer's own estimate of the case. Nor should the lawyer compromise his relationship with and duty toward his client by subtle or open disclaimers of personal belief in the merits of any given argument. He can, in good conscience, communicate to the court the issues and whatever can be said in support of them without, at the same time, advising the court that he is aware of the weakness of the position.

"Remaining in the case does not necessitate that the lawyer litigate it to the utmost. A lawyer who has filed a brief advocating as well as possible only grounds which he finds weak or hopeless need not be called upon to stand up in court and attempt to make an oral argument that conceals the deficiencies in the case. In such a situation, it ought to be permissible for the lawyer to suggest to the court, after appellee's brief and any reply brief have been filed, that appellant would be satisfied to have the case submitted on the briefs. Where the lawyer has presented a brief coupling sound arguments with frivolous arguments insisted upon by the client, oral argument can be addressed to the stronger issues alone, unless the court requests otherwise.

"The approach recommended in the standard, as elaborated in the foregoing commentary, supplements the standard recommended by this Advisory Committee in the report, ABA Standards, Providing Defense Services § 5.3 (Approved Draft, 1968), as follows: 'Counsel should not seek to withdraw because he believes that the contentions of his client lack merit, but should present for consideration such points as the client desires to be raised provided he can do so without compromising professional standards.' (See also ABA Standards, Criminal Appeals, § 3.2(b) (Tent.Draft,

March 1969)). The commentary relating to Section 5.3 noted that the procedures in force in many jurisdictions put defense counsel in the awkward position of arguing against his client and the reviewing court in the unsatisfactory situation of having to review the record itself (thus, in effect, considering the merits) in order to determine whether counsel should be relieved. To avoid such a conflict of interest and duplication of effort, the Committee recommended that counsel present to the court whatever there is to present, recognizing that in many instances this will amount to a presentation of contentions that are not well founded in any established case law. See Johnson v. United States, [124 U.S.App.D.C. 29] 360 F.2d 844, 847 (D.C.Cir. 1966) (concurring opinion); Gallegos v. Turner, 256 F.Supp. 670 (D.Utah 1966). Counsel thus serves his function by appearing on behalf of his client and presenting the client's arguments. He is not, of course, required to distort the state of the law in so doing; indeed, he is obligated to reveal to the court any decisions directly adverse to his client's contentions, if they have not already been presented to the court by the government. ABA Opinions No. 280.

"This procedure satisfies the principles of *Anders* and avoids placing defense counsel in a position in which he may be tempted to take too narrow a view of the arguments that may be made in his client's behalf. At the same time, the lawyer remains consistent to his professional obligation to be candid with the court in the presentation of the appeal."

We are of the opinion that the position of the Advisory Committee should be followed, at least until the Supreme Court of the United States has spoken definitively on the question. Accordingly, it may be reasonably anticipated in criminal cases on direct appeal (and in appeals from denial of motions to vacate filed under Rule 27.26, V.A. M.R.): (1) that applications of counsel to withdraw because the appeal is considered frivolous will be denied; (2) that this Court will insist that counsel for appellants prepare and file briefs which comply with the dictates of Swenson v. Bosler, supra, the position of the Advisory Committee, supra, and the provisions of our Rule 83.05, V.A. M.R.

We turn then to a disposition of the appeal in this case. Respondent attacks the sufficiency of appellant's brief as follows:

"The appellant's counsel is not observing the rules of this Court regarding briefs, but rather is seeking to return to the prior practice under which the Court had the obligation of ruling the points raised in motion for new trial, even though not briefed.

"The Court will notice that the defendant's fourteen 'Points and Authorities' correspond exactly to the 14 paragraphs in his motion for new trial. Most of the 'points' are simply copies without any addition or elaboration. Authorities are cited under only six of the points, and only one is carried forward into the 'argument' portion of the brief.

"We have responded to all 'points' for which authorities are cited, or which show the least indication of merit. This is a burden which the State should not have. Counsel, whether public or private, should brief all points which are set forward as ground for reversal. * * *"

We intend no criticism of appellant's counsel for failing to foresee the adoption of the standards set forth in this opinion. However, we must conclude that his brief does not comply with those standards.

Accordingly, the submission of this case on March 12, 1971, is ordered set aside, and the case is ordered re-docketed in the September Session, 1971; and counsel for appellant is ordered to file, on or before June 24, 1971, a brief which complies with the requirements of this opinion.

All of the Judges concur.