**STATE of Missouri, Respondent,**

v.

**Richard Steven ZEITVOGEL, Appellant.**

**No. WD 32980.**

Missouri Court of Appeals,
Western District.

March 22, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied
May 3, 1983.

Application to Transfer Denied
May 31, 1983.

William M. Barvick, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and PRITCH-ARD and DIXON, JJ.

SHANGLER, Presiding Judge.

The defendant Zeitvogel, then an inmate of the state penitentiary, was convicted of the class A felony of assault in the first degree [§ 565.050, RSMo 1978] and sentenced to a term of thirty years. The victim was the Day Watch Captain Borghardt. The defendant appealed.

The counsel of record for the defendant on the appeal was Mr. William M. Barvick, a special assistant with the Public Defender for the 19th Judicial Circuit. The appeal was reassigned by the Public Defender to another special assistant in that office, Mr. Paul Allred, who filed a brief on appeal. The redesignation of counsel, however, was not made of record or, it appears, made known to defendant Zeitvogel. The defendant learned that Allred, not Barvick, was on the appeal and wrote to Allred to advise him as to what was done and to request a copy of the brief. The brief was completed, and on file with the court of appeals some months before, all, apparently, without consultation or knowledge of defendant Zeitvogel. The defendant then moved this court to order the circuit court reporter to produce a supplemental transcript to facilitate a preparation of a *pro se* brief on appeal to include matters neglected in the Allred brief. Our clerk informed the appellant that our Special Rule XVI prohibits *pro se* filings by a litigant represented by counsel, and that the attempted motion was sent on to his attorney of record, Barvick. It will be understood that Mr. Barvick was long since relieved of that duty by the Public Defender, through the reassignment of the appeal to Allred—but that to the defendant client and to the court, Barvick was still counsel of record. [Allred by then was no longer with the office of the Public Defender.] The dispatch of the Zeit-

vogel motion by our clerk to Barvick, prompted an immediate, courteous and definitive explanation of the contretemps. The cause, however, had already been submitted on briefs and was ready for opinion. Barvick, by formal motion nevertheless, requested the court to delay decision and to order a supplemental transcript to determine whether there be ground to assert prejudice from the final argument of the prosecutor. The prosecution did not object, and the motion was allowed. In due course, a supplemental brief was filed, and to that, a supplemental response by the prosecution.

The original [Allred] brief on appeal asserted five points of error: 1) argument by the prosecutor during voir dire, 2) reference by the prosecutor in opening statement to jury to offenses by defendant other than that charged, 3) evidence by prosecution of offenses by defendant other than that charged, 4) failure of the court to direct a judgment of acquittal for want of evidence of intent to commit the offense, 5) evidence of offenses by defendant other than that charged violated the right to remain silent.

The supplemental [Barvick] brief on appeal asserts four points of error: 1) resubmits point 1 of the original brief [a contention not preserved] as plain error and asserts a more specific context, 2) combines points 2 and 3 of the original brief, 3) that it was plain error for the prosecutor to examine for the inference that defendant Zeitvogel and inmate Guinan were homosexual partners, 4) that it was plain error to allow the prosecutor to examine Zeitvogel about the details of prior convictions.

The supplemental brief was filed with the court and a copy furnished the defendant Zeitvogel. The brief, as formulated, omitted points 4 and 5 of the original [Allred] presentation—[(4) that the failure of the court to direct a judgment of acquittal for failure to prove intent was error and (5) evidence of offenses by defendant other than that charged violated the right to remain silent]. The transmittal by attorney Barvick informed defendant Zeitvogel that the supplemental brief as formulated was all counsel intended to submit on behalf of the defendant on the appeal and, "[i]f you wish to submit anything in addition, you may prepare it pro se and I will request the Court's permission to submit it on your behalf." The advisement of counsel notwithstanding, the defendant Zeitvogel once again moved *pro se*, this time for "specific performance, order to show cause," to compel attorney Barvick to reword point 1 of the supplemental brief to conform with Rule 84.04 and also to reassert points 4 and 5 of the original brief as plain error. The defendant moved also, in default of compliance, to impose the contempt sanction of jail punishment against counsel Barvick.

The clerk of the court was instructed to accept the *pro se* motion as an exception to our Special Rule XVI because the contentions amount to an accusation that the refusal of counsel on appeal to include in the supplemental brief the points 4 and 5 of the original [Allred] brief deprived defendant Zeitvogel of competent appellate advocacy. The motion was taken with the case on submission and the contentions are fully documented so as to enable us to enter our rule.

■■■ The pronounced standard for effectiveness of counsel is a performance which conforms to the care and skill a reasonably competent lawyer exercises to render a similar service under the circumstances. *Seales v. State,* 580 S.W.2d 733, 735[3] (Mo. banc 1979). In terms of appellate advocacy, an appointed counsel owes the duty to an indigent defendant to submit a brief "which defines the legal principles upon which the claims of error are based and which designates and interprets the relevant portions of the trial transcript . . . ." *Swenson v. Bosler,* 386 U.S. 258, 259, 87 S.Ct. 996, 997, 18 L.Ed.2d 33 (1967). That duty was defined more explicitly in *State v. Gates,* 466 S.W.2d 681 (Mo.1971), in terms of the A.B.A. Standards, The Prosecution Function and The Defense Function § 8.3(b) (Approved Draft, 1971). Counsel is bound "to present to the court whatever there is to present, recognizing that in many instances this will amount to a presentation of contentions that are not well

founded in any established case law"—provided, however, counsel can do so without compromise with professional standards. *Gates,* supra, l.c. 683, 684; *State v. Barnes,* 517 S.W.2d 155, 169 (Mo.App.1974). Counsel thus discharges function by appearance on behalf of the client, preparation of briefs conformable to Rule 84.04—which include claims of error proposed by the client. There may arise occasion when the client insists on a point despite protest by counsel that it is groundless. In such case, counsel need not "brief the unbriefable" nor compromise professional standard [*Gates,* supra, l.c. 683] to satisfy a caprice, but the court is nevertheless entitled to have the point presented. The course for counsel is to present the point without developed detail and otherwise dissociate from that contention of error. A.B.A. Standards for Criminal Justice, Standard 4–8.3, Counsel on Appeal (Commentary), p. 111 (2d ed. 1982 Supp.). That procedure not only preserves the integrity of the principles of advocacy, but also subserves the sense of our Special Rule XVI that the court looks to counsel, and not to the *pro se* initiatives of a represented litigant, for the orderly management of an appeal.

█ The substance of points 4 and 5 of the original brief are before us, albeit not formally asserted by the supplemental brief. The decision by counsel Barvick to dissociate himself from the points as groundless is a valid exercise of professional judgment. The sense of point 4 is that the prosecution failed to prove malice aforethought to convict of the first degree assault charged. The prosecution was under § 565.050, a section become effective on January 1, 1979, and in effect at the time of the crime charged. The new criminal code discards the *malice aforethought* terminology, changes the definition of offense, and the elements of proof as well. Section 565.-050 delineates that a person commits the crime of assault in the first degree if: "(1) He knowingly causes serious physical injury to another person; or (2) He attempts to kill or to cause serious physical injury to another person . . . ." The evidence was, as we develop in the course of opinion, that no serious physical injury resulted, therefore the conviction rests on the "attempt to kill or cause serious physical injury" to Captain Borghardt. The state of mind which renders an attempt under § 565.050.1(2) culpable is the act done *purposely, knowingly, recklessly* or *with criminal negligence* [§ 562.016]. The *malice* terminology which point 4 of the original brief asserts must be met by proof to sustain conviction no longer appertains. " 'Purposely' and 'knowingly' refer to what is commonly thought of as intention." The New Missouri Criminal Code: A Manual for Court Related Personnel § 7.3 Culpable Mental State, Comments (1978). There was abundant evidence, as our opinion shows, that Zeitvogel knowingly [intentionally] attempted an armed assault to inflict serious injury upon Borghardt. The insistence by the defendant that counsel assert this contention was to expect a "brief of the unbriefable" and was properly declined by counsel. Point 4 miscegenates the *malice* contention with yet another, separate, and altogether extraneous contention: that § 216.460 [since repealed]— which constituted it a crime for a prisoner to offer violence to a guard—preempts the prosecution and conviction for first degree assault under § 565.050. The law, however, is authoritatively settled against that contention. *State v. Kern,* 447 S.W.2d 571, 579[18] (Mo.1969). That claim of error was a futile assertion.

Point 5 of the original brief is virtually incomprehensible as a contention of error, cites no authority, relates to no content of transcript, and develops no argument. The point asserts:

> The defendant also wants considered by the court the fact that the evidence induced by other crimes of which the defendant had been connected was improper because it did not relate to any connection between the offense for which he was on trial and was not a part of his examination in chief and thus constituted a violation of his rights to remain silent. [sic]

The exposition of the point then rescripts the verdict director, but to what purpose is

not apparent. Then follows a tangle of words which bear not at all on the "point" as declared. The defendant Zeitvogel by the *pro se* motion insists that counsel Barvick was under duty to assert and brief point 5 of the original brief for plain error. To the extent the point contends as error evidence of a crime other than that for which the defendant was on trial, it duplicates point 2 of the supplemental brief, and so is redundant. In the other respects, it is a claim of error unshaped by the "relevant portions of the trial transcript" and undefined by the legal principles upon which it rests. *Swenson v. Bosler,* 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967), l.c. 259; *State v. Gates,* 466 S.W.2d 681, 682 (Mo. 1971).

The motion of the defendant Zeitvogel *pro se* to order counsel Barvick to reassert points 4 and 5 of the original brief is denied.

The crime charged against defendant Zeitvogel resulted from this prison episode: On the Sunday morning, January 25, 1981, Sergeant Matthias was on day watch over Housing Unit 4 of the maximum security penitentiary. The watch was over three tiers of cells on both sides of the cell block, each tier level connected to the other by catwalks. The second-floor tiers are designated Three Walk on the left and Four Walk on the right, and the third-floor tiers are designated Five Walk and Six Walk and, as the other tiers, are connected by catwalks. Sergeant Matthias observed suspicious conduct among some inmates, defendant Zeitvogel and Guinan included. Matthias notified Captain Borghardt by telephone that he needed help, and then saw inmates Zeitvogel and Guinan come out of cell 36 [on Three Walk on the second tier] each covered with blood and armed with a homemade weapon. Matthias thereupon notified the control center there had been a stabbing. Matthias saw Zeitvogel and Guinan run towards the front of the building, and as they did, an inmate [McBroom] came out of the cell 36, drenched in blood, and slumped to the floor.

Captain Borghardt arrived accompanied by Officer McDaniel; by that time Zeitvo-gel and Guinan were on Five Walk [the tier above Three Walk] in the process of an assault upon a third inmate [Camillo]. Borghardt and McDaniel rushed to Five Walk and found all three inmates armed. [Zeitvogel and Guinan each had one-half of a pair of scissors] Zeitvogel and Guinan were at the edge of Five Walk and Camillo was on the catwalk—each set of antagonists attempted to jab at the other. Borghardt, unarmed, placed himself on the catwalk between the two sets of contenders as they continued the attempt to stab each other around Borghardt. As Borghardt attempted to persuade the inmates to give up their weapons, Zeitvogel and Guinan saw a fourth inmate, Medley [cellmate of Camillo] further up Five Walk. Zeitvogel said: "There's another one of the snitches," and they broke away to attack him. To do so, they had to pass Officer McDaniel [also unarmed], whom defendant cornered with a knife. Borghardt overtook Guinan and clasped him in a bear hug. Zeitvogel cornered McDaniel with the knife and McDaniel attempted to disarm Zeitvogel. The defendant turned on McDaniel with the warning: "I told you to keep the f... back." When Zeitvogel saw that Borghardt had subdued Guinan, he wheeled and said: "Turn Frankie [Guinan] lose [sic], if you don't I'm going to kill you, you fat s.. o.. b....." Matthias from his vantage point [as did McDaniel] saw Zeitvogel raise his hand with a weapon poised at the back or head of Captain Borghardt. As Zeitvogel turned on Captain Borghardt, Officer McDaniel subdued him.

■ The first point contends that it was plain error for the court to allow the prosecutor during voir dire to create the impression that the case was of some distinctive importance, all of which was improper argument, and none of which related to the qualifications of the jurors. The exposition of this point directs attention to certain introductory comments by the prosecutor— that this was the first case in two months tried personally rather than by an assistant, that the courtroom was different—and somewhat more impressive—than the usual

courtroom, and that the victim was a prison guard—all of which were calculated to show that the case was of particular importance and that the defendant was a particularly big fish.

In fact, the prosecutor merely commented to the assemblage that it was the first opportunity to try a case before that particular panel, although his assistants had. It was a personal introduction, and the record allows no other inference from that mild courtesy. We accept the surmise of the defendant that the allusion by the prosecutor to how fortunate the venire [and, we can only infer, the entire trial corps] were "to be in a beautiful big courtroom, with a little better air conditioning," referred to the federal courthouse, adopted as the site of the trial because the air conditioners failed in the Cole County courthouse. It was a comment on the felicity of enhanced comfort. Nothing more appears in the record. It was neither prejudicial nor even untoward. The defense counsel, himself, indulged the two practices he now condemns in the prosecutor. His own introduction to the voir dire of the panel announced: "I think I have appeared before most of you before. I notice the acoustics are quite different than we are accustomed to." The final component of the asserted point fails as well. The record shows clearly that the prosecutor wanted the jury to know that the consequences of conviction were so severe—a minimum sentence of ten years—that a fair consideration of the trial was "important to the defendant" as well as to the victim—"in this case a corrections officer" and not "just for the State." The allusion to the status of the victim as a corrections officer was merely prelude to further interrogation as to a predisposition of any jury for or against correction officer testimony. This aspect of the interrogation subserved the distinctive purpose of the voir dire: to uncover prejudice and so select a fair and impartial jury. *State v. Lumsden,* 589 S.W.2d 226, 229[6, 7] (Mo. banc 1979). The first point of the supplemental brief is denied.

The second point asserts that the evidence of the Zeitvogel attack on inmate McBroom was a crime unrelated to the assault upon Borghardt charged against defendant Zeitvogel, and so was error. The argument goes that the attack by Zeitvogel upon Borghardt was in the midst of a melee among three inmates [Zeitvogel, Guinan and Medley] and that the assault occurred, if at all, when Borghardt intervened. The evidence was that Zeitvogel threatened Borghardt because the officer had Guinan in his grasp. Thus, any episode between Zeitvogel and McBroom was extraneous to that event and to the charge of assault upon Borghardt. We note that the defendant does not complain of the evidence of assault between Zeitvogel and Guinan on one side and Camillo on the other [the occasion for the initial intervention by Borghardt]—no less a crime than the antecedent event between Zeitvogel and Guinan against McBroom. The entire episode was a continuous event with a single motivation. The jury was entitled to find that Zeitvogel and Guinan were on a mission of retribution against inmate "snitches." They had left the McBroom cell and then engaged Camillo—where Borghardt first intervened—and then spied the Camillo cellmate Medley and took after him with the comment: "There's another one of the snitches." It was during this last chain in the events of revenge against three separate inmates, which Borghardt frustrated, that the assault charged was committed.

■ It is the usual rule that evidence of another crime by the defendant is not admissible to prove the crime charged. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954). Two exceptions allow the evidence where it proves motive for the crime charged or describes a common scheme of offenses so related that one tends to prove the other. *State v. Shaw,* 636 S.W.2d 667, 671[4] (Mo. banc 1982). The evidence of the McBroom episode was admissible under each of the two exceptions. Point 2 of the supplemental brief is denied.

The third point asserts that it was plain error for the prosecutor to put questions

"which were intended to infer that appellant and Frank Guinan were homosexual partners," not only because the content was prejudicial, but also because the inquiry exceeded the scope of direct examination and was otherwise irrelevant.

The prosecutor asked Zeitvogel to describe his relationship with Guinan. Zeitvogel responded that Guinan was his cellmate, "partners," that they are "like brothers, we run together." The examination continued:

Q. Is it a close personal friendship?

A. Now, how close are you trying to get?

Q. You tell me, Mr. Zeitvogel.

A. I just told you, Man, we're like brothers, we're close.

Q. Would you say that relationship is intimate?

A. What do you mean?

    *    *    *    *    *    *

Q. Was there an affection between the two of you?

A. What do you mean?

Q. Do you understand the word "affection," Mr. Zeitvogel?

A. Man, I said we were like brothers. Now, how else can I say?

Q. Was there something more in your relationship than a normal relationship between two men?

A. Are you trying to say I'm a fag, or something?

Q. No, I am just asking the questions.

A. No, I aint no fruit, or anything like that.

■ The evidence of the relationship between the two—Zeitvogel and Guinan—and whether it was bound by any special intimacy was admissible to show the motive for the assault and armed attempt by Zeitvogel upon Borghardt. It was the testimony of Zeitvogel that it was never his intent "to do anything to Captain Borghardt," but his action was only an attempt to get past the officer "[t]o keep that guy [Medley] from trying to stab Frankie [Guinan] back." The prosecution evidence, on the other hand, was that Zeitvogel not only poised his

weapon to strike Borghardt, but threatened to do so unless Borghardt released his grasp of Guinan: "Turn Frankie loose or I'll kill you, you fat s..o..b....." The inquiry as to any special intimacy between the two cellmates was relevant to prove a motive for that extreme conduct by Zeitvogel against the prison officer and was admissible on that basis. *State v. Shaw,* 636 S.W.2d 667, 671[4] (Mo. banc 1982). Thus, it was within acceptable scope of cross-examination. Point 3 of the supplemental brief is denied.

The fourth point of the supplemental brief contends it was plain error to allow the prosecutor to question Zeitvogel about the details of prior convictions. The defendant took the stand and in the course of direct examination testified that he was presently imprisoned for the service of seventeen years for the crimes of rape, robbery and escape. The prosecutor on cross-examination then posed these questions:

Q. That was an armed robbery of a husband and wife, correct?

A. Yeah.

Q. And then your next conviction, or the one you mentioned next was rape?

A. Yeah.

Q. And that was the rape of the wife of that couple, is that correct?

A. I reckon.

The new information elicited was that the crime was against a husband and wife.

■ The statute [§ 491.050] validates the cross-examination of a witness concerning a prior conviction, but only to affect credibility, and not to prove that the defendant was disposed to criminal conduct—and so work a prejudice as to the offense then on trial. The purpose of impeachment is served merely by the admission of the conviction, or, if denied, by proof of the fact of conviction—the procedure the statute prescribes. To that purpose of credibility, the details of conviction are irrelevant. *State v. Scott,* 459 S.W.2d 321, 323[1] (Mo. 1970). The details elicited on cross-examination—that the prior convictions involved a husband and wife—were not proper. It

was an error, however, from which no manifest injustice resulted.   Rule 29.12.

The judgment is affirmed.

All concur.