STATE of Missouri, Respondent,

v.

James T. EDGAR, Appellant.

No. WD 36851.

Missouri Court of Appeals,
Western District.

March 18, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 24, 1986.

Application to Transfer Denied
June 17, 1986.

Joseph H. Locascio, Sp. Public Defender, Mary Beth Gardner, Asst. Sp. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and BERREY, JJ.

LOWENSTEIN, Presiding Judge.

A jury convicted the appellant, James Edgar, of forcible rape, and the court imposed sentence of ten years of imprisonment. Section 566.030.1, RSMo Cum.Supp. 1984 sets forth the elements of forcible rape: "A person commits the crime of forcible rape if he has sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion."

Edgar's first point on appeal asserts the trial court erred in failing to sustain his motion for acquittal or new trial because there was not sufficient evidence to support the elements of forcible compulsion, lack of consent, and sexual intercourse in that the testimony of the victim was contradictory and uncorroborated.

From the evidence and inferences favorable to the verdict, the facts are the victim, J.C., had been entertaining friends in her home on a Saturday afternoon in February, 1984. Prior to 3:00 p.m. the friends left and Edgar and two companions appeared at the door. J.C.'s trial testimony was she had known Edgar from her employment at a fast food restaurant. After talking for some time she went upstairs to the bathroom. When she came out of the bathroom, Edgar was in the hallway and asked her to go to bed with him. She declined and he called for a companion, Rodney, who came upstairs. Edgar made a second request, and after J.C. refused, Edgar hit her on the head with a stick wrapped in tape. The victim then submitted to Edgar's demands.

Edgar told J.C. to take a bath first "because he didn't want to go to bed with no nasty bitch." She took her clothes off and took a bath in front of Edgar and Rodney because she was "scared he was going to hit me with that stick again." Edgar then ordered her to douche in front of both men while they made various sexual comments and sexually manipulated her body. In the bedroom, J.C. changed the bedsheets upon Edgar's demands. He again held up the stick, which was like a billy club, and demanded she untie his shoe laces. When

Edgar told her to lie on the bed and spread her legs, she noticed Rodney had a knife. Rodney did not come at her with the knife but "made sure that I knew he had it."

J.C. described various acts of oral sex committed on her by the two men. She testified about Edgar's attempt at anal intercourse and several acts of intercourse by Edgar and Rodney. Edgar threatened he would kill her or harm her two children if she called the police. Edgar then ordered J.C. to go downstairs and get chicken for Rodney and him and for a "cousin" who had stayed in the living room during the ordeal. J.C. went downstairs totally nude and ran to a neighbor's house.

The neighbor testified it was cold outside on the day in question. At about six or seven in the evening, she heard a banging at her door. J.C. was standing there nude and said, "Please open the door, I've been raped." The neighbor said the victim was crying and was scared and panicky. The neighbor called the police, who came and found the victim's bathroom wet and bedroom in disarray.

J.C. told police the three men had forced their way in her home. She later admitted that was untrue, that she knew Edgar and she had let them in her home. At the hospital she bore no visible physicial injuries, and no sperm was found in her.

 From the initial contact with the police through the trial, J.C. has positively identified Edgar as the man who raped her. Edgar points out J.C. had reported to police that she was only tapped lightly on the head with the stick and that she bore no physical marks of a beating. Thus, he argues the element of forcible compulsion was not present. This court disagrees. The lack of physical trauma will not invalidate a rape conviction. *State v. Salkil*, 659 S.W.2d 330, 333 (Mo.App.1983).

 As the jury was properly instructed, forcible compulsion means either physical force that overcomes reasonable resistance or a threat, expressed or implied, that places the victim in reasonable fear of death or serious physical injury of himself

or another person. *See* MAI–CR2d 33.01. J.C. was threatened with death or serious harm to her children. Edgar struck J.C. with this stick and threatened her with it. Rodney made sure she knew he had a knife. After these threats and acts they raped her. The evidence going to the element of forcible compulsion was sufficient to submit the case to the jury.

Edgar also contends J.C.'s inconsistent and uncorroborated testimony supports his first point dealing with the insufficiency of the evidence. As to the inconsistent testimony, J.C. initially told the police Edgar and his friends forced their way into her home when in fact she knew him from work and voluntarily let him into her home. The defense fully developed this discrepancy on cross-examination of J.C., who admitted she had initially lied to police. Edgar also asserts J.C. told the police of anal intercourse, whereas at trial she made no such sworn statement. He also points out her accounts as to the number of times she was raped differed. As to uncorroborated evidence, Edgar says the lack of semen after repeated sexual intercourse makes the victim's testimony unreliable.

■ The absence of semen does not invalidate conviction. *Salkil, supra,* at 333. Moreover, the inconsistencies do not bear upon any proof essential to the case. They do not undermine the probative effect of J.C.'s testimony, though it differed with her statements as to the number of assaults made upon her. Her testimony was without internal variance on any essential aspect of the proof of forcible rape. *See id.* Any of the so called contradictions here may be explained by the emotional state of the victim following the long encounter with Edgar and Rodney. *State v. Cooper,* 673 S.W.2d 848, 850 (Mo.App. 1984); *State v. Chaney,* 663 S.W.2d 279, 287 (Mo.App.1983).

■ The rule of law governing this issue is that testimony of a rape victim needs no other corroboration to be submitted to the jury, but evidence inherently contradictory or such as to leave the court or jury clouded with doubt must be corrob-

orated or the conviction will not stand. *State v. Rogers,* 583 S.W.2d 293, 295 (Mo. App.1979). In *State v. Mazzeri,* 578 S.W.2d 355, 356 (Mo.App.1979), the court stated uncorroborated testimony of the victim is sufficient unless her testimony conflicts with physical and surrounding circumstances or with common experience so as to be so unconvincing that it is extremely doubtful. *See also State v. Johnson,* 595 S.W.2d 774, 776 (Mo.App.1980). There is nothing in the evidence here to cloud the jury with doubt or to make the testimony of J.C. extremely doubtful as to the essential proof of the offense. J.C.'s identification of Edgar and her distraught condition at the neighbor's door bolster her claim of rape, and her testimony about the threats and the club made this case submissible.

■ Edgar's second point is presented at his insistance under *State v. Zeitvogel,* 649 S.W.2d 945, 947–48 (Mo.App.1983); *But see State v. Johnson,* 672 S.W.2d 160, 164 (Mo. App.1984). It alleges ineffective assistance of trial counsel and cites four instances whereby counsel rendered ineffective assistance. The public defender was appointed to try the case. The special public defender has handled this appeal. Edgar first raised this point at the hearing on the motion for new trial. Allegations of ineffective assistance of counsel are not ordinarily reviewable on direct appeal, since a Rule 27.26 proceeding in which the issue can be more fully explored is the usual remedy. *State v. Mitchell,* 620 S.W.2d 347, 348 (Mo. banc 1981). Where the record at trial is insufficient for appellate review of ineffective assistance of counsel, the claim should not be addressed on direct appeal. *State v. Kenley,* 701 S.W.2d 185, 186 (Mo. App.1985). Such is the case here.

The third and final point on appeal is presented also at the insistance of Edgar. *See Zeitvogel, supra,* at 948–48. As this court understands it, Edgar claims the court committed error or plain error when it permitted the state to call Mr. Duke, who was with the police department. He testified without objection about the events in question based on statements made to him

by the victim. This point states Mr. Duke gave a polygraph examination to J.C., and although the jury knew nothing about the polygraph test, "it could have been assumed or presumed by the jury that said witness was a polygraphist and that statements of the victim to which he testified would have been assumed to be true by the jury." This point is totally without factual foundation or merit. No error, plain or otherwise, can be found.

The conviction is affirmed.

All concur.