STATE of Missouri,
Plaintiff-Respondent,

v.

Annew ARNEY, Defendant-Appellant.

No. 14943.

Missouri Court of Appeals,
Southern District,
Division Two.

June 1, 1987.

Sidney T. Pearson, Pearson & Carter, St. James, for defendant-appellant.

William L. Webster, Atty. Gen., Jeffrey Philip Dix, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

A jury found the defendant guilty of three counts of assault, three counts of armed criminal action and one count of unlawful use of a weapon. As a prior offender, defendant was sentenced to life imprisonment on one count for the class A felony of assault and on each of the three armed criminal action counts; 15 years on two counts for the class B felony of assault; and 5 years on the class D felony of unlawful use of a weapon, all to be served concurrently. Defendant offers three points on appeal.

The following is a summary of the evidence viewed favorably to the verdict. *State v. Esrock*, 660 S.W.2d 222 (Mo.App. 1983); *State v. Cannady*, 660 S.W.2d 33 (Mo.App.1983). On November 14, 1984, Sheriff John Giles of Crawford County went to the residence of Dorothy Arney and served an ex parte order of protection upon her former husband, the defendant. The next morning Dorothy Arney informed the sheriff the defendant would not leave the home. Mrs. Arney waited at the sheriff's office while Sheriff Giles, accompanied by Deputy Sheriff Leon Stephens, returned to the residence. They knocked on the door. The door held a large pane of glass with a curtain behind it. Defendant came to the door and pulled the curtain back but would not open the door. The sheriff informed defendant that he was violating the court order and would have to leave the premises. Defendant replied he would not leave and no one was going to make him leave. Thereupon he pointed a sawed-off shotgun at the sheriff and deputy. Defendant continued to point the shotgun at the officers as they backed off the porch and left.

Sheriff Giles proceeded to the prosecuting attorney's office. A complaint for displaying a dangerous and deadly weapon was prepared. A warrant was issued. With four highway patrolmen, two deputy sheriffs and the chief of police of Steelville, Sheriff Giles returned to the residence. The testimony of all eight of these law enforcement officers is consistent and corroborative with the exception of some minor details.

The law enforcement officers surrounded the residence. Sheriff Giles was on the east side of the house where the front door was located. He was standing at the side of a highway patrol car which was about 60 feet from the house. Using the public address system of the highway patrol car, Sheriff Giles informed defendant he had a felony arrest warrant and called for the defendant to come out. Some of the officers heard yelling from inside. Moments later a shotgun emerged from the front door and defendant shot at the patrol car shielding Sheriff Giles and Highway Patrolman Hannan. This was followed by a rifle shot aimed in the same direction. Sheriff Giles then ordered tear gas to be fired into the house by the highway patrolman on the north side of the house. Sergeant Wilson fired three canisters of tear gas, two of which went through a kitchen window into the house. Moments later Highway Patrolman Wilhoit saw a curtain move in another kitchen window and turned his head to warn other troopers. As he turned his head back he heard a rifle shot and felt the shot hit his arm. This was followed by another rifle shot. Highway Patrolmen Wilhoit and Sturdevant then returned fire, both using .12 gauge shotguns. They fired into the kitchen window where the rifle shots had come from and where Sturdevant had seen a rifle barrel. Highway Patrolman Wilhoit was pulled to safety. Moments later defendant crawled from the house out the front door on the east side of the house. The defendant and Wilhoit were taken to a hospital. The other officers searched the house and found a .12

gauge shotgun under a north side window and two .22 caliber rifles nearby. However, only one expended shotgun shell and one expended .22 shell were found.

Defendant admitted he was the only person in the house at the time of the shooting. He acknowledged hearing the sheriff's direction for him to come out. He testified, however, that the officers began shooting at him first and he shot back in fear of his own safety. He claimed he shot only the shotgun and never used the rifle and only shot out the front door one time. Defendant was twice asked if he had time after hearing the sheriff to come out of the house before the shooting began. Both times he answered, "Yes."

Defendant was shot through the eye during the fray. He suffered a stroke and a consequent speech impediment but was not otherwise brain damaged. He had been undergoing therapy and testified with the aid of a speech therapist.

The defendant's first contention is that the court committed reversible error in admitting evidence that two of his past convictions for assault involved shooting a police officer. The following is the background for that contention. The defendant's testimony on direct examination included the following.

Q. What happened after the Sheriff told you to come out of the house?

A. I said no.

Q. What happened after that?

A. He started shooting.

. . . .

Q. How many shots did you hear?

A. Three or four before I fired.

. . . .

Q. Let me understand, you heard three or four shots and then you returned fire. How many times did you shoot?

A. Once.

. . . .

Q. Why did you fire?

A. Because I was scared.

INTERPRETER MULLEN: Because I was scared.

Q. Were you afraid for your life?

A. Yeah.

Q. Did you think you were going to be killed?

A. Yeah.

. . . .

Q. And you shot at these officers that were out here didn't you?

A. No, I didn't see no officers. I just shot.

INTERPRETER MULLEN: No, I didn't see no officers. I just shot.

On cross-examination the state propounded the following question to the defendant.

Q. Mr. Arney, I won't ask you about all your previous convictions but I will ask you about two. Isn't it true, Mr. Arney, that on June 18th, 1962 in Madison County, Illinois, you pled guilty to the crime of aggravated assault for shooting a police officer?

The defendant objected in that the question improperly included the occupation of the person that was assaulted. A request for a mistrial was overruled. The question was emphasized by the fact it had to be posed several times before the defendant was able to answer it.

Then later, the state asked the defendant the following question:

Q. Now Mr. Arney, on December 29th, 1975 in Crawford County, Missouri, did you plead guilty or were found guilty of the crime of assault with a certain loaded rifle, on a police officer?

The defendant's objection upon the basis previously stated was overruled.

The state contends the evidence concerning the two convictions was admissible to impeach the defendant. The applicable rule is stated:

Section 491.050 RSMo 1978 permits the prosecutor, when the defendant testifies, to prove any prior convictions *to affect the defendant's credibility.* The prosecutor may elicit the general nature of each crime, *State v. Hood,* 313 S.W.2d 661, 663–64 (Mo.1958), as well as the places and dates of the occurrences and the resulting sentences. *State v. Sullivan,* 553 S.W.2d 510, 515 (Mo.App.1977). The prosecutor acts improperly if he

goes beyond the fact of conviction to unduly emphasize it, *State v. Williamson,* 584 S.W.2d 628, 630 (Mo.App.1979), shows details so as to aggravate the conviction itself, *id.,* or uses the conviction to suggest guilt of the offense presently charged. *State v. Scott,* 459 S.W.2d 321, 324 (Mo.1970).

*State v. Sanders,* 634 S.W.2d 525, 527 (Mo. App.1982) (emphasis in original). Similar expressions are found in *State v. Scott,* 459 S.W.2d 321 (Mo.1970); *State v. Zeitvogel,* 649 S.W.2d 945 (Mo.App.1983); *State v. Woods,* 637 S.W.2d 113 (Mo.App.1982); *State v. Gentile,* 599 S.W.2d 780 (Mo.App. 1980); McCormick on Evidence § 43 (3rd ed. 1984). The limitation expressed in those cases has been held to bar evidence that a prior conviction involved a husband and wife, *State v. Zeitvogel, supra;* involved the use of a shotgun, *State v. Henderson,* 669 S.W.2d 573 (Mo.App.1984); was based upon a large quantity of drugs, *State v. Silcox,* 694 S.W.2d 755 (Mo.App. 1985). Evidence of the details of a rape for which a defendant was convicted have also been held to be inadmissible for impeachment. *State v. Sanders, supra.*

■ In this case the occupation of the victims of the prior assaults was not an element of the offenses. Evidence of that detail was irrelevant for impeachment of the credibility of the defendant as a witness. It was improperly admitted for that purpose. See Gershman, Prosecutorial Misconduct, § 9.2(c)(2) (1986). However, that does not establish reversible error. Receiving admissible evidence is not error even though an improper reason may be assigned for its reception. *State v. Sneed,* 529 S.W.2d 38 (Mo.App.1975).

■ The evidence in question is proof of the commission of other criminal acts by the defendant. It is axiomatic that the state may not prove a defendant's convictions or criminal acts to establish his criminal propensities. *State v. Graham,* 641 S.W.2d 102 (Mo.1982). That axiom has received the following expression.

It is also established that although proof of commission of separate crimes is generally not admissible, *such proof is admissible if it 'has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial....'* 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial.'

*State v. Wing,* 455 S.W.2d 457, 464 (Mo. 1970), cert. denied, 400 U.S. 1009, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971) (emphasis added). Because of frequent emphasis on the exceptions, that statement has been regarded as a general exclusionary rule prohibiting the admission of such evidence, subject to the enumerated exceptions. However, that statement of the rule also contains an affirmative general statement of admissibility. "[S]uch proof is admissible if it 'has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial....' " *Id.* at 464. The affirmative statement has also received the following expressions. "But, whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for its exclusion." *People v. Peete,* 28 Cal.2d 306, 169 P.2d 924, 930 (bank 1946). "The rule excluding evidence of offenses other than the one charged applies only where such evidence is not otherwise relevant and material to the issues of the case." *State v. Tallie,* 380 S.W.2d 425, 432 (Mo.1964). Also see *State v. Shilkett,* 356 Mo. 1081, 204 S.W.2d 920 (1947). Cf. *United States v. Wagoner,* 713 F.2d 1371 (8th Cir.1983). The two statements of the rule are discussed in *State v. Iaukea,* 56 Hawaii 343, 537 P.2d 724 (1975). The latter statement emphasizes that the admissibility of evidence of other offenses is not controlled by rigid adherence to categorized exceptions. The

general subject is analyzed in Mo. Evidence Restated, § 404 (Mo.Bar 1984).

The following are cases of precedential value as examples of the relevancy and admissibility of evidence of other crimes. Evidence of prior convictions for burglary is admissible to show intent in the possession of burglar tools. *State v. Wing, supra.* Evidence of prior convictions for drug offenses is admissible to show predisposition where the defendant asserts the defense of entrapment. *State v. Horton,* 607 S.W.2d 764 (Mo.App.1980). Evidence a defendant was under the influence of a drug is admissible upon the issue of whether or not he was an aggressor and reasonably evaluated the need to defend himself. *State v. Russell,* 602 S.W.2d 465 (Mo.App. 1980). Evidence of prior financial crimes is admissible to show the defendant's, who was charged with embezzlement, need for money. *State v. Niehoff,* 395 S.W.2d 174 (Mo.1965). Evidence of firing a gun earlier in the day was admissible to demonstrate a gun in the hands of a defendant did not accidentally discharge. *State v. Shilkett, supra.* When a defendant claimed a fear of using weapons in seeking to establish self-defense in stabbing a man to death, evidence the defendant possessed a .45 caliber revolver and shot a .25 caliber revolver at a doctor was admissible. *State v. Rand,* 496 S.W.2d 30 (Mo.App.1973); *State v. Ford,* 623 S.W.2d 574 (Mo.App.1981). Evidence of defendant's prior crimes of rape and the victim's knowledge thereof is admissible upon the issue of the victim's resistance and forcible compulsion. *State v. Iaukea, supra.* It is apparent an issue tendered by a defendant may cause evidence of other criminal acts to become relevant and admissible. *State v. Comstock,* 647 S.W.2d 163 (Mo.App.1983).

This is true of the issue of self-defense. However, in many jurisdictions rather stereotyped rules limit the nature of such evidence that is deemed admissible in regard to that issue. In Missouri the following rules have been followed.

On the issue of self-defense there can be no doubt of the rule that evidence of the deceased's reputation for turbulence and violence is admissible as relevant to show who was the aggressor and whether a reasonable apprehension of danger existed; but such evidence must be proved by general reputation testimony, not specific acts of violence, and defendant must show he knew of such reputation when the issue is reasonable apprehension. *State v. Buckles,* 636 S.W.2d 914, 922 (Mo. banc 1982). Also see *State v. Kern,* 654 S.W.2d 147 (Mo.App.1983). See *State v. Gooch,* 186 Conn. 17, 438 A.2d 867 (1982); *Williams v. State,* 249 Ga. 6, 287 S.E.2d 31 (1982); *Hutchins v. State,* 171 Ga.App. 309, 319 S.E.2d 130 (1984); *McClain v. State,* 165 Ga.App. 264, 299 S.E.2d 55 (1984); *State v. Bland,* 337 N.W.2d 378 (Minn. 1983); *State v. Irby,* 368 N.W.2d 19 (Minn. App.1985); *State v. Corn,* 307 N.C. 79, 296 S.E.2d 261 (1982); *State v. Dokken,* 385 N.W.2d 493 (S.D.1986); *State v. Howell,* 649 P.2d 91 (Utah 1982). Additional authorities are collected in *State v. Jacoby,* 260 N.W.2d 828 (Iowa 1977).

> We here hold that where an accused tenders the factual issue of the bad character of the victim of his assault to substantiate his plea of self-defense he thereby extends the scope of the inquiry beyond the res gestae and opens up for inquiry all evidence of like quality having probative value on the merits of said ultimate factual issue.

*State v. Robinson,* 344 Mo. 1094, 130 S.W.2d 530, 532 (1939). Under the latter rule evidence of the defendant's reputation for violence is held admissible. *State v. Page,* 577 S.W.2d 177 (Mo.App.1979). Further, when a defendant presents evidence of his good character, evidence of specific criminal acts does "not constitute admissible testimony to counter evidence of the defendant's good reputation for peaceful behavior." *Id.* at 178. Also see *State v. Earvin,* 510 S.W.2d 419 (Mo.1974).

However, when there is an issue of self-defense, not all evidence of specific criminal acts has been held to be barred. Evidence of an alleged victim's prior violent criminal acts directed toward the defendant is admissible. *State v. Hicks,* 438 S.W.2d 215 (Mo.1969); *State v. Ivicsics,* 604 S.W.2d 773 (Mo.App.1980). In a similar vein, evi-

dence of the defendant's threats and prior criminal acts directed to the alleged victim may be admissible. *State v. Clymer,* 159 S.W.2d 808 (Mo.1942); *State v. Rodgers,* 102 S.W.2d 566 (Mo.1937); *State v. Houston,* 292 S.W. 728 (Mo.1927).

Not all jurisdictions adhere to the exclusion of evidence of specific violent criminal acts relative to the issue of self-defense.

In *Lui,* however, we treated general character evidence and specific prior acts (including those reflected in the victim's criminal record) the same for purposes of corroborating a defendant's self-defense claim as to who was the aggressor. A growing number of other courts are in accord.... As Dean Wigmore has stated: '[T]here is no substantial reason against evidencing the character (of a deceased victim) by *particular instances* of violent or quarrelsome *conduct.* Such instances may be very significant; their number can be controlled by the trial court's discretion; and the prohibitory considerations applicable to an accused's character have here little or no force.' 1 Wigmore on Evidence § 198 (3d ed. 1940) (emphasis in original).

*State v. Basque,* 66 Hawaii 510, 666 P.2d 599, 602 (1983) (citations omitted). Also see *Loesche v. State,* 620 P.2d 646 (Alaska 1980); *Smith v. State,* 273 Ark. 47, 616 S.W.2d 14 (1981); *Jordan v. Commonwealth,* 219 Va. 852, 252 S.E.2d 323 (1979). It is also held,

> Where the defendant in a homicide prosecution has offered evidence tending to show self-defense, testimony by him of specific acts of violence committed by the deceased in his presence or of which the defendant had knowledge prior to the homicide is admissible to show the deceased's character as a violent and dangerous fighting man in order to permit the jury to determine whether the defendant acted under a reasonable apprehension of danger to his person or his life.

*State v. Barbour,* 295 N.C. 66, 243 S.E.2d 380, 384 (1978). Also see *Loesche v. State, supra; Smith v. State, supra; Cooper v. United States,* 353 A.2d 696 (D.C.App.

1975); *People v. Kerley,* 95 Mich.App. 74, 289 N.W.2d 883 (1980); *Matter of Robert S.,* 52 N.Y.2d 1046, 438 N.Y.S.2d 509, 420 N.E.2d 390 (1981); *Jordan v. Commonwealth,* supra. By the same token, it has been held that where a defendant has placed his nonviolent character in issue, evidence of his prior violent criminal acts is relevant. *Squires v. State,* 450 So.2d 208 (Fla.1984); *Brodbent v. State,* 700 P.2d 1021 (Okl.Cr.App.1985).

 The Missouri cases cited demonstrate that in this state, where the defendant has tendered a defense other than self-defense, evidence of his prior criminal acts may be made admissible on the issue of his guilt. Further, where a defendant asserts self-defense, in general, prior criminal acts of violence between the parties is held admissible. The cases from other states cited demonstrate that recognition is being extended to the proposition that when self-defense has been asserted, evidence of specific acts of criminal violence relevant under the facts should not be excluded because of stereotyped rules.

 In this case the defendant claimed the officers shot first. He said he was not shooting at any person and fired only because he was afraid of being killed. He squarely placed in issue his intent and his state of mind toward officers. Cf. *State v. Rand,* supra. Evidence of his prior violent criminal acts on two occasions by intentionally shooting at two police officers is relevant to establish his intent to inflict serious bodily harm and that he did not mistakenly or reasonably misjudge the need for self-defense. That evidence is admissible under the exceptions concerning intent and accident announced in the rule quoted from *Wing.* It is admissible under the affirmative statement of admissibility contained in that rule and in cases such as *State v. Collins,* 669 S.W.2d 933 (Mo. banc 1984).

This conclusion is not contrary to the rule excluding evidence of specific acts as stated in *Buckles.* This case may be distinguished. It is unique in that the prior criminal acts of violence were directed toward a member of the same class as the victims in this case. It is analogous to

prior acts of violence directed toward the same individual. Contra, *People v. Lampkin*, 98 Ill.2d 418, 75 Ill.Dec. 260, 457 N.E.2d 50 (1983).

Nor is that evidence barred by cases such as *State v. Dunn*, 577 S.W.2d 649 (Mo. banc 1979). That case limits impeachment of credibility by evidence of prior criminal acts of a defendant similar to the alleged acts for which he is on trial. *State v. Cleveland*, 583 S.W.2d 263 (Mo.App. 1979) considers as a limiting factor the relevancy of the type of criminal conduct to bear upon the defendant's disposition to tell the truth. Those cases do not bar evidence admissible to establish guilt. *State v. Thompson*, 697 S.W.2d 575 (Mo. App.1985). Nor does the evidence fall within the condemnation of *State v. Collins, supra*. *Collins* condemns the impeachment of a defendant's testimony on direct by cross-examination developing a similar prior criminal act when it was not essential to do so. The portion of that opinion applicable to defendant's first point is: "When the appropriate showing cannot be accomplished without establishing the commission of other crimes, the defendant must bear the burden as well as he can." *Collins*, at 936 (footnote omitted).

Evidence of other crimes is to be admitted as proof of guilt with caution only when the relevancy of the evidence outweighs the prejudice to the defendant arising from the criminal nature of his prior act. *State v. Shaw*, 636 S.W.2d 667 (Mo. banc 1982). That determination is within the discretion of the trial court. *State v. Bannister*, 680 S.W.2d 141 (Mo. banc 1984). A trial court could reasonably find the evidence in question relevant on the issues of intent and the absence of mistake and that its probative force justified its admission. Its admission does not constitute an abuse of discretion. Mo. Evidence Restated, § 403, supra.

Defendant's second point on appeal relates to the same line of questioning. In the first of the questions referred to above, the prosecuting attorney said, "Mr. Arney, I won't ask you about all your previous convictions, but I will ask you about two."

Defendant's second point is that the trial court erred in denying his request for a mistrial and in overruling defendant's objection to the statement because "reference to prior convictions of defendant not supported by the evidence, because the state's reference to such convictions would and did mislead the jury into believing that defendant had other prior convictions not introduced into evidence." None of the five objections to this line of questioning referred to this part of the question. Nor was the contention urged in the second point presented to the trial court in defendant's motion for a new trial.

The defendant is attempting to enlarge his objection on appeal. *State v. Wells*, 586 S.W.2d 354 (Mo.App.1979).

> In addition, the objection was made that the issue of probation was immaterial and irrelevant. On appeal, appellant argues that the permitted inquiry was to show appellant's propensity to commit the crime for which he was being tried. The result is that appellant has enlarged his objection on this appeal. This is prohibited. *State v. Lenza*, 582 S.W.2d 703, 710 (Mo.App.1979). The result is that the issue is only reviewable under our Rule 29.12(b) for plain error.

*State v. Comstock*, 647 S.W.2d 163, 165 (Mo.App.1983).

*State v. Brogan*, 488 S.W.2d 623 (Mo. 1973), is a similar situation. There the prosecutor made statements during his argument to the jury that "defendant had been convicted of crimes involving violence." Id. at 625. Defendant did not object to the remarks and preserved nothing for appeal. The court stated,

> The record is brief and shows clearly this argument could not have deprived defendant of a fair trial. The prosecutor's references to defendant's prior convictions were explicitly referred to as matters the jury could consider only in determining his credibility and were not to be considered in determining his guilt or innocence. *State v. Jones*, 221 S.W.2d 137, 138 [5, 6] (Mo.1949).

Id., at 625.

In this case the phrase was isolated and never repeated. It received no emphasis.

The record reflects no manifest injustice or miscarriage of justice resulted from that portion of the question. *State v. Boyd*, 659 S.W.2d 1 (Mo.App.1983); *State v. Maddox*, 658 S.W.2d 74 (Mo.App.1983). Defendant's second point is denied.

The defendant's third point is that the trial court erred in sustaining an objection to the following question posed to the defendant by his counsel. "Were you attempting to defend yourself?" An objection that this called for a conclusion to be determined by the jury was sustained. "[I]t is generally a question of fact for the jury to determine whether an accused acted in self-defense. *State v. Thornton*, 532 S.W.2d 37, 43 (Mo.App.1975); *State v. Jackson*, 522 S.W.2d 317, 319 (Mo.App. 1975)." *State v. Lawson*, 585 S.W.2d 247, 249 (Mo.App.1979).

■ This court need not determine if the form of the question called for an improper conclusion. The point was not preserved in the defendant's motion for a new trial. Rules 29.11 and 29.12. It was not plain error to sustain the objection. The defendant had testified in detail concerning elements of self-defense. The determination as to whether he did in fact act in self-defense was one for the jury, not the defendant. No manifest injustice or miscarriage of justice resulted from the inability of the defendant to answer the question. The point is denied and the judgment is affirmed.

PREWITT, P.J., and FLANIGAN, J., concur.

HOGAN, J., not participating.